<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
|
PAUL KAMIENSKI,                                |
|
                Petitioner,           |          Civ. No. 02-03091 (SRC)
v.                                             |
|          **OPINION**
ROY HENDRICKS, Administrator,                  |
New Jersey State Prison,                        |
|
                Respondent.           |
_____|

**<u>CHESLER</u>**, <u>District Judge</u>

      This matter comes before the court on the motion of Petitioner Paul Kamienski requesting that the court (1) deem Petitioner Paul Kamienski's amendment and supplement to his Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus filed as of September 5, 2003; (2) order Respondent Roy Hendricks to file an answer or pleading in response to the amended petition; (3) grant Petitioner Paul Kamienski leave to reply to such answer; and (4) order Respondent Roy Hendricks to provide petitioner with several enumerated items of discovery.

**<u>BACKGROUND:</u>**

      On October 14, 1987, Petitioner Paul Kamienski, along with two co-defendants, Anthony Alongi and Joseph Marzeno, a/k/a Michael Testa, was indicted and charged with murder (two counts); murder during the commission of a robbery; conspiracy to commit the crimes of possession of cocain with intent to distribute, and/or robbery, and/or murder; and conspiracy to

possess cocaine with intent to distribute.

On November 18, 1988 Kamienski was convicted in a New Jersey state court of murder (two counts), murder during the commission of a robbery, and conspiracy to possess cocaine with intent to distribute (two counts).  The jury found him not guilty of conspiracy to commit the crimes of robbery and/or murder.

On December 21, 1988, Judge Perskie entered judgments of acquittal on Counts 1, 2, and 5 (charging him with purposeful or knowing murder, and murder during the commission of a robbery).  Judge Perskie sentenced Kamienski on the remaining counts, 6 and 7 (charging him with conspiracy to possess cocaine with intent to distribute), to consecutive terms of imprisonment of twelve years on each count, with parole disqualifiers amounting to ten years.

Notices of Appeal were filed by the State, seeking review of the judgment of acquittal; and by Kamienski, seeking review of his judgment of conviction.  The Appellate Division reversed the judgments of acquittal and reinstated the murder convictions, and modified the judgment appealed by Kamienski by merging the two conspiracy counts.  The matter was remanded to Superior Court, Ocean County, for resentencing.

On April 10, 1992, the Honorable Donald F. Campbell, J.S.C. resentenced Kamienski on the two murder counts to concurrent terms of life imprisonment, with parole disqualifiers of thirty years.  The court also sentenced him to a twelve-year term of imprisonment on the merged conspiracy counts, to be served consecutive to the concurrent sentences on the murder counts.

On June 26, 1992, the New Jersey Supreme Court denied Kamienski's petition for certification.

On or about July 7, 1992, an application for post-conviction relief was filed on

Kamienski's behalf by new counsel.  In the petition, it was alleged that Kamienski's right to effective assistance of trial counsel had been violated because of a conflict of interest and that his right to be present at all material stages of the proceedings had been violated because he was not present at the hearing on the State's motion to remove his then trial counsel.

By order dated November 9, 1992, the Honorable Donald F. Campbell, J.S.C., denied the application and the Appellate Division affirmed the order, *per curiam*.

On January 27, 1994, Kamienski's petition for Certification was denied.  On May 24, 1994, the United States Supreme Court denied Kamienski's petition for Certiorari.

On April 10, 1997, Kamienski and co-defendant Anthony Alongi filed a joint petition for Post-Conviction Relief, alleging, *inter alia*, that the State had failed to disclose Brady/Giglio material to the defense.  The State responded and Kamienski and Alongi replied.  The application was denied by the Honorable Vincent J. Grasso, J.S.C., by order entered September 15, 1997.

Timely notices of appeal were filed on behalf of Kamienski and Alongi.  By order dated March 19, 1998, the Appellate Division granted Kamienski and Alongi's joint application for a temporary remand to Superior Court, Ocean County.

On remand to Superior Court, Ocean County, Judge Grasso denied Kamienski and Alongi's recusal application.

Amended notices of appeal were filed on behalf of Kamienski and Alongi.  On March 14, 2000, the appeals were argued on behalf of Kamienski and Alongi at the Appellate Division.  On May 9, 2000, the Appellate Division, *per curiam*, vacated the order of Superior Court, Ocean County, and remanded the matter to Superior Court, Ocean County, for further proceedings.

By order filed June 8, 2000, the Appellate Division denied Kamienski and Alongi's joint

3

motion for reconsideration.

On August 18, 2000, the petition for post-conviction relief was argued before the Honorable Vincent J. Grasso, J.S.C., pursuant to the Appellate Division's remand instructions. By order filed September 8, 2000, the application for post-conviction relief was denied without a hearing by Judge Grasso.

Notices of appeal were thereafter filed on behalf of Kamienski and Alongi on October 12, 2000.  By order filed January 23, 2001, the Appellate Division granted Kamienski and Alongi's motion to file a joint brief and appendix.  The court denied the motion to consolidate the appeals, and instead ordered that the appeals be scheduled and heard back-to-back.  On January 11, 2002, the Appellate Division affirmed the denial of the application for post-conviction relief.

On April 10, 2002, the New Jersey Supreme Court  granted Kamienski an extension of time to file a petition for Certification.  On June 12, 2002, the New Jersey Supreme Court denied Certification.

On June 26, 2002, Kamienski filed the pending habeas petition which was entered on the following day.  Alongi's habeas petition, Civ. No. 02-3090, was ordered to be treated as a companion case.  The two petitioners filed a joint habeas brief, appendix, and declaration in support of their habeas petitions.

On September 24, 2003, this Court entered an order admitting Timothy McInnis, Esq. as *pro hac vice* counsel, and Jerome Ballerotto, Esq. as local counsel.

Prior to proper substitution of counsel, McInnis attempted to file an amended habeas petition on behalf of Kamienski in early September of 2003.  On October 15, 2003, the amended and supplemented petition was entered on the federal docket.

On October 16, 2003, Kamienski filed the instant motion for various relief, as described above.[1]

## DISCUSSION:

### I.  The Amended Petition:

Petitioner seeks to "augment the four grounds for relief set forth" in his original petition, and to add "two new grounds for relief."  The original four grounds were broadly described as follows:  (1) Insufficient evidence and improper charge re accomplice liability; (2) Improper jury selection process; (3) Unfair trial due to improper summation by prosecutor, prejudicial evidence and denied severance; and (4) Brady-Giglio violation re key witness's deal with the State and her Grand Jury testimony and denial of PCR hearing re same.  The additional two grounds in the amended petition are:  (5) Brady-Giglio violation re FBI lab documents; and (6) Ineffective assistance of counsel.  (Pet. Motion Br. at 1,2).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year filing deadline for non-capital habeas corpus petitions.  28 U.S.C. § 2244(d).  The bill states that

> [t]he limitation period shall run from the latest of -
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[1]  This account of the procedural history, as recounted in Respondent's Opposition Brief, pp. 2-9, is undisputed (Pet. Reply Br. at 6).

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

However, 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Thus, in order for the Court to consider Kamienski's original petition, and/or his amended petition, they must have been filed within one-year of the latest of the enumerated triggering events to satisfy the statute of limitations.[2]

A.  The Amended Petition Filing Date

Petitioner seeks that this Court direct the clerk of the court to accept for filing and enter the amended petition on the docket as of September 5, 2003, the date on which Petitioner had a private investigator submit it to the clerk of the court for filing.  Currently, the court docket shows the amended petition filed as of October 15, 2003.

---

[2]  The Court notes at the outset that Petitioner never raised Grounds Five or Six in the State courts.  Therefore, if the Court finds that these claims are not time-barred, his petition would be a "mixed" one in that some claims were exhausted while others were not.  (See Pet. Reply Br. at 10).  Thus, if the new claims are not precluded, the Court would have to determine whether or not to stay the Federal habeas petition to allow Petitioner to bring the unexhausted claims in State court.  Compare Rhines v. Weber, 125 S.Ct. 1528 (2005) with Crews v. Horn, 360 F.3d 146 (3d Cir. 2004).

The State has not addressed this issue specifically in its opposition brief, presumably arguing that the relief sought in the amended petition would be time-barred regardless of whether it was filed on September 5, 2003, or October 15, 2003.  The State argues that Petitioner's amended petition was time-barred as of June 27, 2002 (Resp. Opp. Br. at 12).

It appears to the Court that regardless of whether we accept the State's contention that the amended petition was time-barred as of June 27, 2002, or Petitioner's contention that the proper statute of limitations period for his Brady claims ended on October 16, 2003,[3] there will be no practical difference between regarding the amended petition as filed on September 5, 2003, as opposed to October 15, 2003.

For this reason, the court will deny Petitioner's request to deem the amended petition filed as of September 5, 2003, as moot.

### B.  Petitioner's Ground Six for Ineffective Assistance of Counsel

Petitioner seeks to amend his Habeas petition by adding the new ground of Ineffective Assistance of Counsel.  This new claim was first raised on September 5, 2003, at the earliest.

As none of the other triggering events of § 2244(d)(1) are relevant to Petitioner's claim for ineffective assistance of counsel, Petitioner had one year from the date on which his judgment became final by the conclusion of direct review or the expiration of the time for seeking such review in which to file this claim, in accordance with 28 U.S.C. § 2244(d)(1)(A).  In this case, the relevant triggering date was April 24, 1996, the date the EADPA was enacted, as Kamienski's state judgment became final prior to that date.  Therefore, Kamienski had until

---

[3]  For further discussion of this point of contention, see *infra*, Section I.C.

April 24, 1997 to file a habeas petition, absent a tolling of the one year period, in accordance with 28 U.S.C. § 2244 (d)(2).

As detailed above, Kamienski and Alongi filed a Joint Petition for Post-Conviction Relief on April 10, 1997, followed by timely appeals which effectively tolled the limitations period until June 12, 2002, when the New Jersey Supreme Court denied certification.  Because the period of limitation had already run for 351 days from April 24, 1996 until April 10, 1997, Kamienski then had another 14 days, ending on June 26, 2002, to file his petition for Habeas Corpus.  Kamienski filed his Habeas Corpus petition on June 26, 2002, the final date of the limitations period, and thus, his original petition appears to have been timely filed.[4]

 Petitioner filed his amended petition on September 5, 2003, at the earliest.[5]  This is well after the statute of limitations from 28 U.S.C. § 2244(d) had elapsed.

Nevertheless, Kamienski's amended petition would be timely if it could be said to "relate back" to his original petition (assuming that the original petition was timely).  As the court in Peterson v. Brennan stated,

> When, as in this case, a party seeks to amend a habeas petition after the expiration of the applicable statute of limitations, Federal Rule of Civil Procedure 15(c) governs whether the claim will be deemed to relate back to the original timely filed petition.  See U.S. v. Thomas, 221 F.3d 430, 436 (3d Cir.2000).  Under Rule 15(c), a claim relates back when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

2004 WL 1505253 at 10 (E.D.Pa. June 15, 2004)

---

[4]  Respondent explicitly did not concede that Kamienski's original Habeas petition was timely filed, although according to the calculations above, it appears that it was.  The Court is not ruling on that issue at this point.

[5]  See discussion *supra* Section I.A.

With this in mind, it is clear that Petitioner's Ground Six for Ineffective Assistance of Counsel does not "relate back" to his original petition.  In a footnote contained in a letter dated December 15, 2003, Petitioner argues that this new ground "relates closely to the issue of insufficient evidence, which was included in the original petition," and thus it is not time-barred.  Although it may be true that the issue of sufficiency of evidence is arguably related to the issue of effectiveness of counsel, this is not the kind of relationship of claims contemplated by Federal Rule of Civil Procedure 15(c).  This is so because the

> touchstone of Rule 15(c) is notice.  Accordingly, an amendment will be deemed to relate back to the original pleading only when it provides factual clarification or amplification of a claim, not when it adds an entirely new theory of relief.  "Where the effect of an amendment is the factual clarification of existing claims, the government has been given all the notice that statutes of limitations were intended to provide and the amendment is consequently permissible.  Yet where the proposed amendment advances new claims or theories, it cannot be said that the original petition ... provide[s] notice of such a different sort of theory.  Therefore, the amendment cannot relate back under Rule 15(c) and it must be time-barred."

Abu-Jamal v. Horn, 2001 WL 1609761 at 4 (E.D.Pa. Dec. 18, 2001) (internal citations omitted).

Ground Six of Kamienski's amended petition was raised for the first time in September or October of 2003.  Although there may be some relationship between Petitioner's allegations of insufficient evidence and that of ineffective assistance of counsel, the Court is convinced that any such relationship does not change the fact that the latter is a new theory of relief rather than a clarification of the former claim.  Thus, it cannot be said that the original petition provided the State with notice of a claim for ineffective assistance of counsel.[6]

_____

[6] For the same reasons, it appears to the Court that grounds one through four of Kamienski's amended petition do relate back to the four claims in the original petition, to the

9

Therefore, because it was filed after the statute of limitations had run, and because it did not relate back to his original petition, Ground Six must be dismissed as it is time-barred.

C.  Petitioner's Ground Five for Brady-Giglio Violation Re FBI Lab Documents

Petitioner also seeks to amend his original petition by adding the new ground of a Brady-Giglio violation re FBI lab documents.  Again, this claim was first raised on September 5, 2003 at the earliest, or on October 15, 2003 at the latest.

(1) Statute of Limitations Analysis

Ground Five was raised in the same amended petition as Ground Six, and therefore, under an analysis pursuant to the Statute of Limitations provided in 28 U.S.C. § 2244(d)(1)(A), it is time barred for the reasons explicated above.  In short, Ground Six was raised more than one year after the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  Furthermore, it is clear that Petitioner's allegation of a Brady-Giglio violation related to FBI lab documents does not relate back to any of the four grounds raised in his original petition.

Petitioner argues, however, that while Ground Five may not be timely under 28 U.S.C. § 2244(d)(1)(A), it is still timely under Subsection (D).  (Pet. Reply Br. at 7).  In other words, Petitioner claims that Ground Five is timely because it was brought within one year of "the date

_____

extent that they merely augment those original claims.  Furthermore, it appears that while the State does not wish to concede that the original petition was timely, Respondents do not argue that the amendments to these four claims do not relate back to the original four claims. Therefore, the Court will deem those amended claims (Grounds 1-4) filed as of June 26, 2002, the date on which Kamienski filed his original petition for Federal Habeas relief.

on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  The basic contention is that Petitioner filed his amended petition within one year (October 15, 2003 at the latest) of the date that Kamienski received the FBI's FOIA documents which evidence the State's alleged Brady violation (specifically, October 16, 2002).  The Court will now address this argument.

First, the Court notes that Petitioner initially based his Brady claims on his allegedly newly discovered Blanket Hair and Fiber Notes (re Blankets) and Petroleum Distillates Report (re Towel) (Pet. Amendment and Supplement of 10/15/03 at 14-18).  However, over the course of briefing Brady-related issues to the Court, Petitioner discovered and conceded that his trial counsel had in fact been in possession of an FBI report dated February 1, 1988, which showed that no petroleum was found on the towel (Letter from Pet. to the Court dated 1/13/05 at 2-3).  Therefore, it appears that Petitioner has no basis for claiming a Brady violation with regard to the FBI findings concerning the towel.

Therefore, the "core Brady material" that Petitioner currently contends was not produced to him prior to trial are the Freedom of Information Act ("FOIA") documents including the "notes of former FBI special agent Andrew Podolak and internal FBI records relating to the tests performed by him" relating to blankets, hair, and fiber.  (Letter from Pet. to the Court dated 1/13/05 at 2).  These FBI hair and fiber law notes are important to Petitioner because they "undermine [trial witness] Duckworth's claim that the blankets came from Petitioner's boat (and, that by implication, he lent assistance in disposing of the bodies)."  (Pet. Amendment and Supplement of 10/15/03 at 16)

Although Petitioner contends that he first actually received the materials on October 16,

11

2002, "the statute of limitations starts running from 'the date on which the factual predicate of the claim or claims presented *could have been discovered* through the exercise of due diligence,' § 2244(d)(1)(D), not the date on which the factual predicate actually was discovered." <u>Slutzker v. Johnson</u>, 393 F.3d 373, 382 n.9 (3d Cir. 2004) (emphasis in original).  Therefore, if Petitioner, through the exercise of due diligence, could have discovered the factual basis for his Brady claims more than one year before he filed his amended petition, the claims would be time-barred under § 2244(d)(1)(D).  Conversely, if Petitioner could not have diligently discovered the factual basis for his Brady claim before that time, then his Brady claims were timely brought in Federal Court.

The Third Circuit, in <u>Schlueter v. Varner</u>, clarified that "[d]ue diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." 384 F.3d 69, 74 (3d Cir. 2004).  Consequently, the Court recognized that § 2244(d)(1)(D) "provides a petitioner with a later accrual date than section 2244(d)(1)(A) only 'if vital facts could not have been known.'"  <u>Id.</u>  In sum then, the date on which Kamienski "could have discovered the factual predicate of his Brady claim through the exercise of due diligence is the date on which he was '*on notice of the facts* which would support a claim, not ... the date on which the petitioner has in his possession evidence to support his claim.'"  <u>DeVeaux v. Schriver</u>, 1999 WL 1095580 at 3 (S.D.N.Y. 1999) (internal citation omitted) (emphasis added).

In this case, Petitioner's Brady claim essentially boils down to the following.  The FBI performed tests on hairs taken from the two victims, hairs taken from Kamienski, and tests on blankets wrapped around the victims, as well as two blankets from Kamienski's boat, along with various fibers and hairs from Kamienski's boat and the victims' car.  The State sought to use

these tests to determine if some connection between the victims and Kamienski could be evidenced by showing that the blankets wrapped around them originated from Kamieski's boat. Handwritten notes allegedly written by FBI special agent Andrew Podolak state that no head hairs different from those of the victims were found on the two victims' blankets.[7]  (Pet. Exh. A, filed 1/13/05 at A000059).  Those notes also conclude that no transfer of textile fibers between the rug on Kamienski's boat and the blanket wrapped around one of the victims was detected. (Id.).

Petitioner had a forensic scientist, Lawrence A. Presley, examine the FBI lab notes and reports, and submit a declaration as to his conclusions based thereon.  Based on Agent Podolak's notes, Presley opined that the blankets wrapped around the victims "had not been regularly used and stored by Mr. Kamienski for many years on his boat."  (Decl. of Lawrence A. Presley ¶11). Presley reached this conclusion because if the blankets wrapped around the victims were really Kamienski's, "one would expect to find his head hair on them" (Id. at ¶12), and because pubic hair similar to that of the male victim was found on the dead man's blanket.  In conclusion, Presley determined that the "FBI FOIA materials I have reviewed, together with the assumptions I have been asked to make, do not support Ms. Duckworth's testimony connecting [two blankets recovered with the victims] with Mr. Kamienski."  (Id. at ¶18).

In short, Petitioner's Brady claim is based on the FBI's findings which tend to negate a connection between the blankets and Kamienski's boat, in contravention of trial witness

---

[7]  The Court also notes that those same Podolak notes appear to state that no head hairs different from those of the two victims were found on the two blankets taken from Kamienski's boat either.  While this appears to undercut Petitioner's argument, neither party has briefed this issue, as it goes to the merits of the Brady claim.

Duckworth's testimony.  Therefore, in order to survive a statute of limitations analysis under §

2244(d)(1)(D), Petitioner must demonstrate that he could not have diligently discovered the

FBI's findings which tend to negate a connection between the blankets wrapped around the

victims and Kamienski, prior to September 6, 2002 (at the earliest, considering Petitioner's

request to have his amended petition deemed filed as of September 5, 2003).

 Respondent asserts that Petitioner is precluded from raising these Brady claims because

Petitioner was aware since the time of the trial that the FBI analyses of the blankets, hairs, fibers,

etc. tended to show a lack of connection between Kamienski and the blankets wrapped around

the victims.  Specifically, Respondent asserts that the alleged Brady materials were directly

addressed in court by Kamienski's trial attorney via his cross examination of the State's science

officer Jeffrey Thompson.  (Resp. Reply Br. dated 11/21/04 at 3).  Respondent cites to the

following cross examination of Detective Thompson by Kamienski's attorney, Thomas J.

Cammarata:

> Q.  Suppose for example these blankets came from a boat such as depicted
> in 28 and 29 for identification, [Kamienski's boat] and they were inside, in the
> enclosed area of this boat.  You were capable, in October of 1983, of going to that
> boat and doing your testing and attempting to determine whether in fact there was
> anything on that boat which would scientifically prove that these two blankets,
> 11a and 11b, came from that boat?  You were capable of doing that, weren't you?
> A.  Yes sir.
> Q.  And you were never asked to do that?
> A.  That's correct sir.
> Q.  Well you sent a number of items to the FBI for testing; is that correct?
> A.  That is correct, sir.

(Trial Trans. 5T 98-22 to 99-11).

> . . . .

> Q.  Now, let me show you DK-1 for identification, which is a letter dated

14

October 13th, 1983, and ask you, do you recognize that?

    A.  Yes.  This is the letter that I offered.

    Q.  Okay.  And this is a letter, as I said, dated October 13th, 1983, and it is directed to the FBI Laboratory, is that correct?

    A.  That is correct.

    Q.  And what you were basically doing in this letter is submitting a list of items for analysis by the FBI Lab?

    A.  That is correct.

    Q.  And what were you looking for at this time?

    A.  *We were looking for a cross match of fibers, hairs*, possible blood, and an identification, I believe, of the projectiles.

    Q.  How many blankets did you submit to the FBI on October 13th, 1983; do you remember?  Or if you need this –

    A.  I would have to refer to the report.

    Q.  You can just read it to yourself.

(5T 100-9 to 101-3) (emphasis added) (the Court notes that while Detective Thompson never ended up answering the question about how many blankets were submitted, exhibit DK-1 reveals that one rust colored blanket taken from each of the victims was submitted, and that two reddish brown color blankets received from Kamienski were submitted as well (see Resp. Exh. RA 49-52)).

    . . . .

    Q.  Detective Thompson, I think I left off asking you, or I started to ask you questions about DK-1 for identification.  And did you have a chance – or take a minute to look at that, if you will.

    THE COURT.  All right, Mr. Cammarata.

    Q.  Now, that lists all of the items that you sent to the FBI Lab on October 13th, 1983; correct?

    A.  That's correct, sir.

    Q.  And it's a pretty extensive list, would you say?  It has at least some approximately fifty items; correct?

    A.  That's correct.

    Q.  *And what you were doing, so it's clear is, you were sending items that you collected during the course of this investigation and your participation in the investigation, such as hair samples, fingernail scrapings, things you took off the boat that you described, and you were sending them to the FBI so that the FBI could do a comparison for you; correct?*

    A.  *That is correct sir.*

    Q.  *And what you were trying to do is get comparisons between items, for example, taken off the boat, and items found on the victim, such as hair or whatever; correct?*

15

   A.  *That is correct, sir.*
   Q.  *And as I understand it, everything that you submitted came back*
*negative; correct?*
   A.  *That is also correct.*
   Q.  *So that when we say it came back negative, there were no comparisons*
*that were able to be made; correct?*
   A.  *That is correct.*
   Q.  *And that would be really true of* everything *that you sent to the FBI*
*with regard to this* entire *investigation; correct?*
   A.  *That is also true.*

(5T 103-23 to 105-8)(emphasis added).

Although respondent asserts that the foregoing testimony indicates that Kamienski was

actually aware of the substance of the FOIA materials, the Court need not go that far.  It is

sufficient for purposes of the § 2244(d)(1)(D) analysis to find that Petitioner was on notice that

the FBI conducted tests which tended to show no connection between Kamienski and the victims,

so that if Petitioner thought the State had withheld exculpatory evidence, due diligence would

necessitate a timely inquiry into the basis for the FBI's conclusions.  The Court indeed finds that

Detective Thompson's testimony that the FBI's tests on *everything* that was submitted with

regard to the *entire* investigation clearly showed that there were no comparisons that could be

made between the items taken from the victims and the Defendants.  This was sufficient to put

Kamienski on notice that the FBI had conducted tests resulting in findings which tended to

establish a lack of connection between himself and the victims, as Ms. Duckworth had testified.

It is clear, however, that Petitioner did not make his FOIA request within one year of

hearing Detective Thompson's testimony.  Mr. Thompson testified during Kamienski's trial in

October of 1988.  Nonetheless, Petitioner did not even request the FOIA materials until more

than a decade later.  (See Pet. Br. dated 10/15/03 at 2 ("Recently, Kamienski submitted a FOIA

request to the FBI.  In response to this request, he obtained certain documents from the FBI's hair and fiber unit in Washington (the 'Brady Materials')").  Certainly, due diligence under these circumstances would entail at least a request for any FOIA materials a reasonable time after Petitioner was on such notice.  However, because Petitioner did not bring these Brady claims within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" in accordance with 28 U.S.C. § 2244(d)(1)(D), Ground Five for Brady-Giglio Violation will be dismissed as untimely.

(2) "Actual Innocence" Analysis

As an alternative to arguing that his Brady claims are timely under 28 U.S.C. § 2244(d)(1)(D), Petitioner contends that the "application of the time limitation in the AEDPA to bar Kamienski's Brady claim would violate the Suspension Clause and the 8th and 14th Amendments because he credibly shows 'actual innocence'".

A Petitioner who is asserting his "'actual innocence' of the underlying crime ... must show 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence' presented in his habeas petition." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup v. Delo 513 U.S. 298, 327 (1995)).  The Third Circuit, in Hubbard v. Pinchak, explained that "a petitioner must support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial" and the Court must then consider "whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." 378 F.3d 333, 339-40 (3d Cir. 2004) (internal citations omitted).

Although a credible allegation of "actual innocence" enables courts to hear procedurally defaulted claims, to date, neither the Supreme Court not the Third Circuit has addressed the issue of whether there is an "actual innocence" exception to the statute of limitations provided in 28 U.S.C. § 2244(d)(1).  See Hussmann v. Vaughn, 67 Fed.Appx. 667, 669 (3d Cir. 2003) (declining to consider whether there is an "actual innocence" expection to the EADPA's statute of limitations); Sims v. Patrick, 2005 WL 914744 at 4-5 (E.D.Pa. April 19, 2005) (recognizing that the Third Circuit has not addressed whether is there is an "actual innocence" exception to the statute of limitations, but noting that the Fifth Circuit has rejected such an exception); Holbrook v. Folino, 2005 WL 469589 at 6 (E.D.Pa. Feb. 28, 2005); Scott v. Lavan, 2005 WL 387635 at 5 (E.D.Pa. Feb 16, 2005).  In all of the cases cited above, the Third Circuit and the District Courts of this Circuit found it unnecessary to decide whether such an exception exists because they each found that the Petitioners had not proven their actual innocence.  See, e.g., Hussmann, 67 Fed.Appx. at 669 ("In view of the fact that we conclude that Hussmann has no basis to assert a claim of actual innocence, we will not go on to consider ... whether there is an "actual innocence" exception to the EADPA's statute of limitations.").  Similarly, this Court finds that Petitioner has not shown that he is actually innocent, and it therefore need not decide whether an "actual innocence" exception to the statute of limitations exists.

In light of the Court's finding above regarding Petitioner's notice of potentially helpful FBI lab documents, it is clear that Petitioner would not be able to show it "more likely than not that no reasonable juror would have convicted him in light of the new evidence."  Hubbard, 378 F.3d at 340.  As discussed above, the jury in this case heard testimony from Detective Thompson that the FBI's tests on *everything* that was submitted with regard to the *entire* investigation

showed that there were no comparisons that could be made between the items taken from the

victims and the Defendants.  It would thus be extraordinarily difficult for Petitioner to

demonstrate that had he presented his "newly discovered Brady materials" to the jury, it is more

likely than not that no reasonable juror would have convicted him.[8]  Furthermore, although

Petitioner contends that the doctrine of equitable estoppel saves his Brady claim, this would only

be true if he pursued his Brady claim with due diligence from the time he had notice of the FBI

materials.  As the Supreme Court recently stated in Pace v. DiGuglielmo, "[u]nder long-

established principles, petitioner's lack of diligence preclude's equity's operation."  2005 WL

957194 at 6 (April 27, 2005).  Accordingly, the Court finds that Petitioner's allegation of "actual

innocence" is insufficient to allow review of his time-barred Brady claims.


## II.  Answer and Reply:

Petitioner also requests that this Court order the State to answer the Amended Petition

within forty-five days, and allow Petitioner to reply within fifteen days.

Respondents stated that they do not object to a court order scheduling an answer to the

original petition "as long as sufficient time, beyond 45 days, is provided."  (Resp. Opp. Br. p.2).

Local Civil Rule 81.2(d) states that "[t]he respondent shall file and serve his or her

---

[8]  The Court also notes that Petitioner wishes to show his actual innocence via evidence
that was available to him before the trial.  (See, e.g., Letter from Pet. to the Court dated 1/13/05
at 2 ("Even though it may not be Brady material [because it was given to Kamienski's trial
counsel pre-trial], the February 1, 1988 Report still has value as further evidence of Kamienski's
innocence.") However, whether or not such evidence was in fact presented to the jury, it would
not be a sufficient basis for an "actual innocence" claim because it was available at trial.  (See
Hubbard, 378 F.3d at 340 ("A defendant's own late-proffered testimony is not 'new' merely
because it was available at trial. [Defendant] merely chose not to present it to the jury.").

answer to the petition or motion not later than 45 days from the date on which an order directing

such response is filed with the Clerk, unless an extension is granted for good cause shown."  In

light of the length and complexity of the record in this case, the Court will grant Respondent a

fifteen day extension, for a total of sixty days in which to answer.

Therefore, the Court will order Respondents to answer Grounds one through four of

Petitioner's Habeas Corpus Petition, as amended by his Amendment and Supplement, within

sixty (60) days.  The Court will further grant Petitioner leave to reply to such answer.


## III. Discovery:

Petitioner additionally contends that the State should provide discovery to Petitioner

within fifteen days.

Rule 6(a) of the Rules Governing Section 2254 Cases states that "[a] judge may, for good

cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may

limit the extent of discovery."  However, the Court need not determine at this stage whether or

not to permit discovery in this matter, as Respondent has not yet answered the Petition.

The Court thus finds that Petitioner's request for discovery is premature at this point, but

Petitioner may renew that request after Respondent's have filed their answer.


## CONCLUSION:

For the foregoing reasons, the Court finds that Petitioner's amendments of Grounds One

through Four relate back to his original petition, and will thus be treated as if they were filed at

the time of the original petition.  Conversely, the Court finds that Petitioner's Ground Five for

Brady-Giglio Violation Re FBI Lab Documents and his Ground Six for Ineffective Assistance of Counsel are both time-barred pursuant to 28 U.S.C. § 2244(d)(1).

The Court also finds it unnecessary to deem the amendment and supplement to Kamienski's petition to be filed as of September 5, 2003.  Therefore, the filing date will remain October 15, 2003.

In addition, the Court will order Respondent to answer Grounds One through Four of the amended petition no later than sixty (60) days from the filing of the order, and allow Petitioner to reply to such answer.

The Court will not entertain any requests for discovery until after Respondent has answered the petition.


_____s/_____
Stanley R. Chesler, U.S.D.J.


DATED:  May 10, 2005